**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **MARIE R. LUCERO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO.  09-2610** |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

---

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                    **September  26, 2011**

Plaintiff Marie Lucero filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("SSA") denying her claim for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act.

Ms. Lucero seeks reversal of the Commissioner's decision on the grounds that the Administrative

Law Judge's ("ALJ") finding that Ms. Lucero is not disabled was not based on substantial

evidence.  Magistrate Judge Lynne Sitarski issued a Report and Recommendation ("R&R")

recommending that the case be remanded to the Commissioner for further review.  The

Commissioner has filed objections to the R&R, arguing that the ALJ's determination was

supported by substantial evidence and should be upheld.

Upon this Court's careful, independent consideration of the administrative record, the

parties' submissions, and the applicable law, the Court has determined that the ALJ's decision

was not supported by substantial evidence, but has reached that conclusion for different reasons

than those set forth in the R&R.  Therefore, although the Commissioner's objections to the R&R

will be sustained, the case nonetheless will be remanded to the Commissioner for further

proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI August 28, 2007, claiming that she had been

disabled since July 15, 2006, because of lumbar degenerative disc disease, bilateral carpal tunnel

syndrome, bipolar disorder, depression, anxiety, and Post-traumatic Stress Disorder.[1]  The ALJ

found that Plaintiff had severe impairments of a mood disorder and a back disorder, that she

retained the residual functional capacity to lift and carry up to twenty pounds, and to stand, walk,

or sit for eight hours in a workday (but required "performing postural work occasionally"); and

that she could perform only simple and repetitive tasks with occasional changes in the work

setting and occasional contact with the public and coworkers.[2]  The ALJ also found that Plaintiff

had moderate limitations in the ability to maintain concentration, persistence, and pace and had

experienced episodes of decompensation.[3]  Although the ALJ found that Plaintiff could not

perform her past relevant work as a hospital cleaner, the ALJ concluded that because Plaintiff

could perform other work she is not disabled.[4]

After exhausting her administrative appeals, Plaintiff filed suit in this Court, contending

---

[1] R&R at 1-2.

[2] Administrative Record ("R") at  54-60.

[3] R. 57-58.

[4] R. 60-62.

that the ALJ's decision was not supported by substantial evidence because the ALJ

(1) improperly rejected the opinion of Plaintiff's treating physician and failed to consider

Plaintiff's mental-assessment scores; (2) failed to properly evaluate Plaintiff's subjective

complaints with regard to her mental impairments; and (3) provided an insufficient hypothetical

question to the vocational expert.  The Magistrate Judge agreed with the first of these points and

recommended remand to the Commissioner for further evaluation of Plaintiff's application.

## II. Legal Standards

Disability determinations before an ALJ "involve shifting burdens of proof."[5]  The

claimant initially satisfies the burden of showing she is disabled by demonstrating that she cannot

return to her customary occupation.[6]  Once the claimant's initial burden is met, the burden shifts

to the Commissioner, who must show that the claimant can still engage in substantial gainful

activity.[7]

This burden-shifting process follows a five-step sequential evaluation process

promulgated by the SSA.[8]  At step one, the ALJ must determine whether the applicant is

currently engaging in "substantial gainful activity"; if the ALJ so finds, the claim is denied.[9]  In

---

[5] Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

[6] 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3).

[7] 20 C.F.R. §§ 404.1520(b), 416.920(b).

[8] 20 C.F.R. §§ 404.1520, 416.920; see also Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000).

[9] 20 C.F.R. §§ 404.1520(b), 416.920(b); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

step two, the ALJ must determine whether the claimant is suffering from a severe impairment.[10]

If the claimant suffers from a severe impairment, the ALJ at step three compares the claimant's

impairment to a list of impairments presumed to preclude any gainful work, which are listed in

Part 404, Subpart P, Appendix 1 of the applicable regulations ("listed impairments").[11]  If the

applicant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps

four and five.  At step four, the ALJ must determine whether the applicant has the residual

functional capacity to perform past relevant work.[12]  If the applicant proves she cannot resume

her former occupation, the burden shifts to the Commissioner at step five, where the

Commissioner must demonstrate that the applicant is capable of performing other work available

in the national economy.[13]  If the Commissioner cannot demonstrate that the applicant is capable

of other available work, the ALJ must find that the applicant is disabled.

A court reviewing a Social Security case must base its decision on the record of the

administrative proceedings and the pleadings of the parties.[14]  The court's review of legal issues

is plenary, but its factual review is limited.[15]  The court must determine whether the record

contains substantial evidence to support the ALJ's factual findings, and whether the

---

[10] 20 C.F.R. §§ 404.1520(c), 416.920(d).

[11] See 20 C.F.R. §§ 404.1520(d), 416.920(d).

[12] 20 C.F.R. §§ 404.1520(e), 416.920(e).

[13] Id.

[14] 42 U.S.C. § 405(g).

[15] Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

Commissioner applied the proper legal standards in making its decision.[16] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]  The amount required is more than a mere scintilla, but less than a preponderance of the evidence.[18]  If the ALJ's factual findings were determined according to the correct legal standards and are supported by substantial evidence, the court is bound by them, "even if [it] would have decided the factual inquiry differently."[19]

A district court must review *de novo* those portions of a magistrate judge's report and recommendation to which a party has objected.[20]  The district court may in its discretion "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[21]

## III. DISCUSSION

The Magistrate Judge concluded that the ALJ did not adequately consider all of the Global Assessment of Functioning ("GAF") scores that Plaintiff received from different treating sources.  Plaintiff first sought treatment for mental impairments on July 15, 2007, when she went to Crozer Keystone Health System, reporting that she had suicidal ideation because of marital

---

[16] See Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).

[17] Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995).

[18] See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[19] Fargnoli, 247 F.3d at 38.

[20] 28 U.S.C. § 636(b)(1)(c).

[21] Id.

and employment problems.[22]  Plaintiff was admitted for psychiatric treatment and stabilization, and upon her admission had a GAF score of 30, indicating major impairment.  Two days later, Plaintiff requested discharge, denying that she was suicidal; she was discharged in stable condition.[23]  At discharge, Plaintiff was assessed a GAF score of 50, indicative of serious impairment.

On September 7, 2007, Plaintiff sought a psychiatric evaluation from Dr. Akhbarati, who found that Plaintiff's concentration and memory were intact; her judgment was fair; and she was oriented times three.  Plaintiff denied suicidal ideation and reported that she had missed work because of lack of sleep and trouble concentrating.  Dr. Akhbarati assessed Plaintiff's GAF score at 50.[24]  On October 11, 2007, Salvatore Cullari, Ph.D., reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment, which found that Plaintiff had only mild or moderate functional limitations.[25]

Several months later, on July 30, 2008, Dr. Mayekar performed an initial psychiatric evaluation and completed a Psychiatric/Psychological Impairment Questionnaire, in which he concluded that Plaintiff was markedly limited in most of the mental activities listed on the form.  Dr. Mayekar, who had just begun treating Plaintiff, did not provide comments or test results in support of his assessment, which included a GAF score of 45.[26]

---

[22] R&R at 7.

[23] Id.

[24] Id. at 8.

[25] Id. at 8-9.

[26] Id. at 9-10.

Plaintiff argues, and the Magistrate Judge agreed, that the ALJ failed to consider some of Plaintiff's GAF scores, and did not consider adequately the GAF scores of 45 and 50 that indicated serious impairments, and which contradicted the ALJ's finding of moderate impairment.  The Commissioner objects to the R&R because the ALJ did note two of the GAF scores and explained that she gave no significant weight to Dr. Mayekar's July 30, 2008 opinion in part because the "initial evaluation occurred on the same date he completed the form and it is difficult to believe that in one clinical evaluation session the doctor was able to determine that the claimant had so many symptoms."[27]

A denial of benefits may be supported by substantial evidence even if the ALJ does not discuss each GAF score in the record, as the GAF score "does not have a direct correlation to the severity requirements of the Social Security mental disorder listings, and a GAF score of 45, if credited, would not require a finding of disability."[28]  As long as the ALJ adequately explains why the evidence relied upon by the claimant did not persuade the ALJ as to the seriousness of the claimant's limitations and the ALJ did not "'cherry-pick[]' or ignor[e] medical assessments that ran counter to her finding," remand is not warranted.[29]

In this case, although the ALJ did not mention each GAF score, she cited scores of 45

---

[27] R. 60.  Dr. Mayekar completed a second questionnaire on December 15, 2008, that was very similar to the July questionnaire. At the hearing on October 16, 2008, the ALJ expressed interest in obtaining additional records from Dr. Mayekar, which counsel for Ms. Lucero undertook to provide.  The ALJ agreed to hold the record open for two weeks, but the second questionnaire was not submitted until two months later, after the ALJ had rendered her decision. R. 86-87.  The questionnaire is included in the administrative record, but it is unclear whether the Appeals Council considered it. R. 24-44.

[28] Gilroy v. Astrue, 351 F. App'x 714, 715 (3d Cir. 2009) (not precedential) (citation omitted).

[29] Rios v. Comm'r of Soc. Sec., No. 10-4517, 2011 WL 4059780, at *6 (3d Cir. Sept. 14, 2011) (not precedential) (citations omitted).

and 50, reviewed the history of Plaintiff's mental-health treatment, including Plaintiff's

hospitalization and later evaluation by Dr. Akhbarati, and explained that "[i]n terms of the

claimant's alleged depression, she stopped seeing the psychiatrist at Community Hospital and did

not seek other mental health care for several months.  During that time she was non compliant

with taking the prescribed medication.  Within two months of following Dr. Mayekar's treatment

plan, the claimant began to improve noticeably."[30]  Because the ALJ's decision adequately

discussed Plaintiff's assessments and treatment, the Commissioner's objection to the R&R will

be sustained.

Resolving this issue does not end the Court's inquiry, however, because Plaintiff

requested review of two other aspects of the ALJ's decision:  the assessment of Plaintiff's

credibility regarding her limitations and the hypothetical question to the vocational expert.

Because the Magistrate Judge determined that these issues implicated the ALJ's evaluation of the

medical evidence, which the Magistrate Judge already had concluded required further

development, the R&R did not address the substance of the arguments. Rather than refer the case

back to the Magistrate Judge to consider these issues, the Court will review the record as to these

issues.

Plaintiff argues that the ALJ improperly discounted Plaintiff's testimony regarding her

mental-health limitations.  An ALJ must consider subjective complaints that may support a claim

for benefits, particularly if those complaints are supported by medical evidence.[31]  However,

---

[30] R. 59.  The regulations provide that failure to follow prescribed treatment without a good reason
precludes a finding of disability.  20 C.F.R. §§ 404.1530(b), 416.930(b).

[31] Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981).

because an ALJ has the opportunity to observe a claimant's demeanor, an ALJ's credibility finding as to those complaints is entitled to deference.[32]  Here, the ALJ explained the reasons for not crediting all of Plaintiff's self-described limitations.  The ALJ concluded that Plaintiff's statements regarding the "intensity, persistence, and limiting effects" of her symptoms lacked credibility due in part to the fact that Plaintiff did not seek mental-health treatment for several months and did not take her medications as directed, and that Plaintiff's condition improved when she complied with treatment.[33]  With due consideration of the deference afforded to the ALJ's assessment of credibility, the Court concludes that the ALJ's decision in this regard is supported by substantial evidence.

On the final issue presented for review, the Court concludes that the hypothetical question to the vocational expert did not encompass all of the limitations  found by the ALJ.  The ALJ posed the following hypothetical question to the vocational expert:

> I want you to assume an individual of claimant's age, education, and work experience having the following residual functional capacity.  Being able to perform at the light exertional level of activity, meaning lift up to 20 pounds, sit/stand/walk combination with [INAUDIBLE].  Occasional postural activities, being limited to simple repetitive tasks, with only occasional changes in work setting and occasional contact with the public and coworkers.[34]

Plaintiff argues that this hypothetical question failed to encompass the ALJ's findings that Plaintiff had moderate limitations in her ability to maintain concentration, persistence, and

---

[32] Reefer v. Barnhart, 326 F.3d 376, 280 (3d Cir. 2003).

[33] R. 59.

[34] R. 84.

9

pace.[35]  The Commissioner argues that these limitations are encompassed within the limitations to simple repetitive tasks, only occasional changes in work setting, and occasional contact with the public and coworkers.

For the ALJ's decision to be supported by substantial evidence, the hypothetical question to the vocational expert must "accurately convey all of [the claimant's] impairments, and the limitations they cause."[36]  In Ramirez v. Barnhart, the Third Circuit held that including a requirement that a job be limited to one- to two-step tasks did not adequately encompass a finding that the claimant "often" had deficiencies in concentration, persistence, or pace.[37]  As the Commissioner correctly notes, the functional scale used to assess concentration, persistence, or pace was changed after the ALJ's decision in Ramirez.  Both the old and new scales comprise five levels of limitation, with "often" at the third level on the old scale, and "moderate" at the third level on the revised scale.[38]  Therefore, some courts have found "often" and "moderate" to represent equivalent limitations, which must be included in the hypothetical question with specificity.[39]

---

[35] R. 57-58.

[36] Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).

[37] Id. at 552.

[38] Strouse v. Astrue, No. 07-4514, 2010 WL 1047726, at *6 (E.D. Pa. Mar. 19, 2010), citing Colon v. Barnhart, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006); Dynko v. Barnhart, No. 03-3222, 2004 WL 2612260 (E.D. Pa. Nov. 16, 2004). However, in an unpublished decision, the Third Circuit distinguished the holding in Ramirez in part by reference to the "often" limitation in that case as opposed to the "moderate" limitation before it. McDonald v. Astrue, 293 F. App'x 941, 946 n.10 (3d Cir.2008) (not precedential).  In McDonald, however, the Court found that there was no support in the record for the claimant's complaints, but instead, evidence to the contrary.  Gayton v. Astrue, No. 08-3667, 2009 WL 1456608, *3 (E.D. Pa. May 19, 2009).

[39] Strouse, 2010 WL 1047726 at * 6; Weinsteiger v. Astrue, No. 09-1769, 2010 WL 331903, *10 (E.D. Pa. Jan. 25, 2010); Bunch v. Astrue, No. 08-cv-487, 2008 WL 5055741, * 3 (E.D. Pa. Nov. 26, 2008) (citing cases).

Although the hypothetical question here did not refer specifically to Plaintiff's moderate limitations in concentration, persistence, and pace, it did include limitations to simple repetitive tasks, with only occasional changes in work setting and occasional contact with the public and coworkers; some courts have found such limitations sufficiently descriptive.[40]  However, even if these limitations could be said to encompass moderate limitations in concentration, persistence, and pace in some cases, here the hypothetical question failed to incorporate the ALJ's finding that Plaintiff had exhibited one or two episodes of decompensation, a term which "refers to exacerbations or temporary increases in symptoms or signs, accompanied by a loss of adaptive functioning."[41]  Because the Court finds that the ALJ's hypothetical question did not adequately encompass all of Plaintiff's limitations, the case will be remanded to the Commissioner.[42]

## IV. CONCLUSION

For the foregoing reasons, this Court sustains the Commissioner's objections to the R&R, grants Plaintiff's request for review on other grounds, and remands for further consideration pursuant to the fourth sentence of 42 U.S.C. § 405(g).  An appropriate order follows.

---

[40]See Douglas v. Astrue, 2011 WL 482501, at *5 (E.D. Pa. Feb. 4, 2011) (holding that hypothetical limiting the claimant to unskilled work adequately accounted for moderate limitations in concentration, persistence, and pace); Reid v. Astrue, No. 08-300, 2009 WL 2710243,at *7 (E.D. Pa. Aug. 28, 2009) (holding that "because the record does not suggest that Plaintiff's moderate difficulties in 'concentration, persistence, and pace" would limit Plaintiff's ability to perform 'simple, repetitive tasks,' there was valid justification for the ALJ's omission of more specific references in the hypothetical").

[41] R. 58.

[42] Cf. Russo v. Astrue, 421 F. App'x 184, at *7 (3d Cir. 2011) (not precedential) (holding that a hypothetical question that included the limitation that the person "would not have a quota to fulfill" accounted for moderate difficulties with concentration, persistence, pace, and decompensation episodes).